## Griffey et al. v. McCloud et al.

(Decided Jan. 15, 1935.)

STRATTON & STEPHENSON for appellants.

E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On August 1, 1921, Freeland Griffey and Laura. Griffey, his wife, executed and delivered to T. M. Hunt three notes of $2,500 each and one for $750 due on the 1st day of May of the years 1922, 1923, 1924, and 1925, respectively. These notes were secured by a lien on a. tract of land which T. M. Hunt and others on the same date conveyed to the makers. On June 8, 1922, T. M. Hunt and the other grantors conveyed another tract of land to Freeland Griffey and wife for a recited consideration of $3,650, for which the grantees executed their note due on or before the 8th day of June, 1925, and. this note was likewise secured by a lien on the land. conveyed.

On July 28, 1926, T. M. Hunt instituted this action in equity against the makers of the notes seeking to recover on the last two mentioned in the deed of August 1, 1921, and the $3,650 note mentioned in the later conveyance, and for the enforcement of the purchase-money lien to secure their payment, subject, however, to a number of credits set forth in the petition which it was alleged left a balance due exclusive of interest, of $4,897. Thereafter T. M. Hunt died, and his widow, Lennie Hunt McCloud, who had remarried, filed a petition for revivor and to be made party plaintiff, alleging that she was the sole beneficiary under the will of her husband, and that prior to the filing of the original petition he had transferred and assigned to her all the notes sued on; that, by proper order of the Pike county court, she had been appointed administratrix of the estate of T. M. Hunt, and had qualified and was acting as such, and she asked that the action be revived in. her name, as administratrix of the estate of T. M. Hunt, deceased, and in her own right.

By answer, as amended, defendant Freeland Griffey alleged, in substance, that, in an action of the county board of education of Pike county against T. M. Hunt seeking to recover the sum of $1,680, he had been summoned and had answered as garnishee and had paid to, or for the benefit of, Lennie Hunt McCloud, all sums. due on the note, except the sum of $1,680, for which he was liable as garnishee. He set out sums paid to plaintiff or to her attorneys evidenced by checks and receipts copied at length in the answer.

On February 17, 1931, the court entered a judgment against the defendants for the sum of $1,680, the

amount admitted by the answer to be due, the judgment reciting that it appeared from the admissions of counsel that this sum had been attached in the case of Pike county board of education against T. M. Hunt, and directing that it should be paid to the clerk of the court to be held subject to future orders, and that the case be referred to the master commissioner to hear proof and make a report with reference to the balance, if any, found due on the notes.

On January 7, 1931, defendants filed an amended answer in which they set out a number of credits to which they were entitled, in addition to the credits memtoned in the petition and in their original answer as theretofore amended.

On September 17, 1931, plaintiff filed an amended petition setting out all the original indebtedness and the amount and date of a number of payments which she alleged left a balance due the estate of $3,139.97, and withdrew all allegations of the original petition respecting credits. One of the allegations enumerating the credits reads:

"* * * That on the 12th day of March, 1923, there was credited the sum of $1600 the amount of the judgment for the County Board of Education against T. M. Hunt for school house which he was accused of burning."

By answer to the amended petition, defendants denied that the $1,600 mentioned in the quoted excerpt was paid on the judgment in favor of the county board of education, and alleged that this sum was paid on the note several years before the school was burned. This answer set out a number of other credits to which defendants were entitled, and in a second paragraph alleged that in November, 1927, defendants made a settlement with plaintiff and her attorneys of all matters in litigation, at which time it was found that they were indebted to plaintiff in the sum of $700 in addition to the sum of $1,680 garnisheed in the hands of defendants by the Pike county board of education; that thereafter defendants paid the balance of $700 evidenced by checks aggregating that amount, and that, upon payment of that sum, plaintiff in the presence of her attorneys, executed a writing showing a complete settlement of all sums except the $1,680, and released the lien on the

lands except as to the latter sum. They pleaded such settlement as a complete defense to any further proceedings in this action.

By reply plaintiff admitted that the Pike county board of education had attached the sum of $1,680 in the hands of defendants, but denied that since the attachment defendants had paid all the money due on the notes, except $1,680. In a second paragraph she admitted that defendants attempted to make a settlement with her attorneys, but alleged that in making such settlement they fraudulently and corruptly produced raised checks and receipts which had not been paid, and that the alleged settlement was therefore fraudulent and void.

After hearing evidence, the commissioner, on December 29, 1930, filed a report which, according to his views, showed a balance of $3,139.97 yet due on the notes, this including the sum which had been attached by the Pike county board of education. Attached to this report is a statement showing interest calculation and payments on the notes as allowed by him. He also referred to certain checks which should have been allowed as credit and some which should not have been allowed. Defendants filed exception to the report of the commissioner which was overruled, and on final hearing it was adjudged that, in addition to the sum attached in the hands of defendants by the county board of education, there was still a balance of $1,514.97 due the estate, and that the administratrix recover such sum, and directed sale of the land to satisfy the judgment, and defendants are appealing.

Counsel for appellants in their brief have made calculations which on their face show the indebtedness, except the $1,680 garnisheed by the county board of education, has been fully satisfied, but in this calculation they take into account a number of credits which were not allowed or were not taken into account by the commissioner. It is apparent from this brief that counsel are claiming a number of credits set out in the original petition and which they say appear on the back of the notes. They alleged in their last amended answer that they are entitled to the credits mentioned in the original petition as well as to additional credits claimed in the answer as amended, and this is not denied by the reply. So far as we are able to ascertain

from the commissioner's report, some of the amounts mentioned in the original petition as credits have not been taken into account; however, there is nothing in the record to show the credits, if any, on the back of the notes, except the pleadings. In the commissioner's report he referred to a check of $210 to O. A. Stump and Frank Damron and a check to F. P. Damron for $63.53, and says that they were given for attorney's fees contracted by T. M. Hunt in his lifetime and should not have been charged to appellee in the settlement. Messrs. Stump and Damon were attorneys for Mrs. McCloud when she made the settlement with appellants and which is pleaded in the amended answer. The check for $210 shows on its face that it is "for payment in full on T. M. Hunt land notes and settlement." We have searched the evidence heard by the commissioner and have found nothing to support the report with respect to either of these checks. Neither appellee nor her attorneys testified, and there is nothing to support her allegations that the settlement pleaded by appellants was procured by fraud, except some discrepancies in two or three checks filed by appellants as evidencing credits claimed by them. Some of the checks are somewhat illegible, blotted, and blurred, and indicate erasures or changes, but an employee of the bank on which they were drawn testified that the amount for which the checks were apparently given and for which credit is claimed was paid by the bank, except in two or three instances. One check appeared to be for $279, but Freeland Griffey testified it was for $219, and the banker testified the latter sum was paid on the check. A check dated February 5, 1923, written with a pencil, is blurred, and indicates erasures. Freeland Griffey testified that this check was for $700, but the banker testified that $600 was paid to T. M. Hunt on it. There is a check dated March 12, 1922, which on account of illegibility is difficult to tell whether it is intended to be given for $80 or $800. Freeland Griffey testified that this check was intended for $80; that he took the check to learn the correct amount, and claimed he was given credit by $80 on it in his settlement with Mrs. McCloud. According to the bank's perforated stamp, this check was paid December 15, 1922, and was charged to the Griffey account as $21. In no event is the difference between the apparent amount of these checks and the amount paid to T. M. Hunt on them sufficient to make up the balance found to be due on the notes. While the

commissioner in his report recommends that the checks to O. A. Stump and F. J. Damron, hereinbefore referred to, should not be allowed as credits, appellants, as we understand it, claim that they, together with a $426.47 check given to appellee, went to make up the final payment of $700 on the notes. In the last calculation made by the commissioner, a $700 credit is allowed, but we are unable to tell whether this included the checks to Stump and Damron. In view of what we have already said with respect to these checks and the evidence of Mr. Griffey that they were payments on the notes which stands undenied, appellants were entitled to credit by them. In the state of the record it is impossible to make an accounting between the parties with any assurance of accuracy, since, from the uncontroverted allegations of appellants' pleading, they were entitled to some credits which have not been allowed by the commissioner or the chancellor in arriving at the balance due. Some of the credits allowed by the commissioner correspond in amount with some of the additional credits appellants allege should have been allowed, but it is impossible to determine whether they are credits claimed by appellants. It is, however, very apparent from the record that some of the credits claimed in appellants' pleadings and not denied in appellees' reply have not been allowed by the commissioner or taken into account in the judgment. This should have been done.

Since the judgment must be reversed for reasons indicated, either party may further plead, and additional evidence may be heard concerning any credits to which appellants claim they are entitled.

Judgment reversed for proceedings in conformity with this opinion.